71 So.3d 627 (2010)
Ex parte William C. COLEMAN.
(In re William C. Coleman v. State of Alabama).
1090975.
Supreme Court of Alabama.
August 27, 2010.
*628 William C. Coleman, pro se.
Troy King, atty. gen., and Jean A. Therkelsen, asst. atty. gen., for respondent.
SMITH, Justice.
William C. Coleman pleaded guilty to first-degree rape, first-degree sodomy, and two counts of first-degree sexual abuse. Coleman then filed a petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P., alleging ineffective assistance of counsel; the circuit court summarily dismissed Coleman's Rule 32 petition. The Court of Criminal Appeals affirmed the circuit court's summary dismissal of Coleman's petition. Coleman v. State (No. CR-09-0088, Feb. 19, 2010), ___ So.3d ___ (Ala.Crim.App.2010) (table). We granted Coleman's petition for the writ of certiorari. We now reverse the judgment of the Court of Criminal Appeals and remand the case to that court with directions to remand it to the circuit court for an evidentiary hearing on Coleman's Rule 32 petition.

Facts and procedural history
On April 7, 2008, Coleman pleaded guilty to the following offenses: (1) first-degree rape, see Ala.Code 1975, § 13A-6-61(a)(3);[1] (2) first-degree sodomy, see Ala. Code 1975, § 13A-6-63(a)(3);[2] and (3) two counts of first-degree sexual abuse, see Ala.Code 1975, § 13A-6-66(a)(1).[3] The Jefferson Circuit Court sentenced him to 20 years' imprisonment on the rape conviction, 20 years' imprisonment on the sodomy conviction, and 10 years' imprisonment on each of the sexual-abuse convictions and ordered that the sentences were to run concurrently.
Coleman signed a "defendant's statement of satisfaction of services rendered by court appointed attorney" with regard to each of the guilty pleas he entered. In each of those statements of satisfaction, Coleman placed a check mark indicating an answer of "yes" to the following questions:
"1. Are you satisfied that your attorney. . . is a competent, good attorney and has represented you to your best interest in the settlement of this case (these cases)?

*629 "2. Are you satisfied with the plea bargaining in this case (these cases)?
"3. Did you plead guilty of your own free will?"
Additionally, Coleman placed a check mark indicating an answer of "no" to the following questions:
"4. Has anyone forced you or coerced you in any manner to get you to plead guilty in this case (these cases)?
"5. Has anyone promised you anything to get you to plead guilty?"
At the bottom of each statement of satisfaction, the following language appears: "If you answered `yes' to questions 1, 2 & 3 and `no' to questions 4 & 5, sign this form indicating your attorney has looked to your best interest and your concurrence with this Statement of Satisfaction." As noted, Coleman signed a statement of satisfaction as to each of the guilty pleas.
In March 2009, Coleman filed a petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P.[4] In the Rule 32 petition, Coleman contended that his attorney's ineffective assistance rendered his guilty pleas involuntary because, Coleman said, his attorney had provided him and his wife with erroneous information "concerning parole eligibility and work-release." Specifically, Coleman claimed that his attorney informed him that the attorney had "data" showing that persons sentenced to 20 years' imprisonment serve only 6 years and 8 months before being paroled; that if Coleman accepted the plea agreement he could be sent to a work-release center in approximately one year; and that, while he was at a work-release center, Coleman could "likely" obtain passes allowing him to visit his wife on weekends. The information allegedly given Coleman by his attorney proved to be inaccurate; Coleman later learned that he was ineligible for either parole or work release.[5] Coleman contended that, but for his attorney's misrepresentations, he would not have pleaded guilty. Accordingly, Coleman said, he should be allowed to withdraw his guilty pleas.
The State moved the circuit court to dismiss Coleman's Rule 32 petition. In its motion, the State contended, among other things, that Coleman "offer[ed] no proof to support his claims other than his own self-serving statements" and noted that Coleman "provide[d] no affidavit from either his wife or his attorney" showing that the conversation between Coleman, his wife, and his attorney regarding Coleman's eligibility for parole and work release ever occurred.
Coleman filed an answer to the State's motion to dismiss his Rule 32 petition. In the answer, Coleman, citing Ford v. State, 831 So.2d 641 (Ala.Crim.App.2001), argued, *630 among other things, that, "[a]t the pleading stage, Coleman does not have the burden of proving his claims. Rather, he must provide only a clear and specific statement of the grounds upon which relief is sought." Coleman further stated that, "[d]espite the State's erroneous argument that Coleman must offer proof of his claim, Coleman does, however, offer he [sic] and his wife's affidavits showing his material allegations are true." In his affidavit, Coleman stated, in pertinent part:
"[My attorney] advised that, based on data he had, I could be paroled after 6 yrs, 8 mos, I could be moved to a work release program, and possibly get weekend furloughs. He added that I could possibly get out sooner due to prison overcrowding.
"My options were to accept the plea agreement, based on the statements [my attorney] made, or go to trial and possibly face a longer sentence. My wife and I jointly agreed to accept the plea agreement, based on [my attorney's] statements, thinking that I would serve considerably less than 20 years.
"Upon researching, I found that sex offenders are not eligible for parole or work release. I would serve the entire 20 years. Had I known that, I would not have accepted the plea agreement. I would have elected to go to trial. After all, at my age of 63, a 20 year sentence is a life sentence for me. I had nothing to loose [sic] by going to trial."
(Emphasis in original.)
In her affidavit, Coleman's wife stated, in pertinent part:
"[Coleman's attorney] advised that, based on some data that he had, that Mr. Coleman would be eligible for parole after 6 yrs, 8 mos. That after a `few years' he could be moved to a work release program. He added that Mr. Coleman could get out sooner due to prison overcrowding.
"Considering my husband's age of 63, we elected, jointly, to accept the plea agreement instead of going to trial and risking more [prison] time. [Coleman's attorney's] statements were the deciding factor in our deliberation. Had we realized the statements to be false, we would have elected to go to trial."
On September 16, 2009, the circuit court entered an order summarily dismissing Coleman's Rule 32 petition. In the order, the circuit court found, in pertinent part:
"[Coleman] claims that his guilty pleas were involuntarily made as a result of ineffective assistance of counsel, in that counsel misrepresented to him that he would be eligible for parole after six years and eight months and that he could go to a work release center in about a year. Petitioner offers an affidavit from both himself and his wife to support his claims. However, he provides no affidavit from his attorney that such a conversation actually took place. In fact, Exhibits 1, 2, 3 and 4 [Coleman's plea agreements] do not contain any of the information relative to `shorter prison sentences', `work release' or `early parole.' Moreover, Exhibits 5, 6, 7 and 8 attached hereto, which are defendant's signed statements of satisfaction of services rendered by his attorney, all reflect that defendant pled guilty, in all of his cases, of his own free will, and was not promised anything in exchange for said pleas, etc."
Coleman moved the circuit court to reconsider its order summarily dismissing his Rule 32 petition; the circuit court denied the motion.
Coleman appealed to the Court of Criminal Appeals, reasserting his claim that he was denied effective assistance of counsel when his attorney allegedly misinformed him about his eligibility for parole and work release if he pleaded guilty. The *631 Court of Criminal Appeals affirmed the circuit court's summary dismissal of Coleman's Rule 32 petition in an unpublished memorandum. Coleman v. State (No. CR-09-0088, Feb. 19, 2010), ___ So.3d ___ (Ala.Crim.App.2010) (table). In its unpublished memorandum, the Court of Criminal Appeals concluded, in pertinent part, that,
"[e]ven if we are to assume that Coleman has pleaded sufficient facts to support a claim that trial counsel erred under the first prong of Strickland [v. Washington, 466 U.S. 668, 687 (1984),] Coleman has pleaded a bare allegation of prejudice under the second prong of Strickland. Coleman essentially claims that but for counsel's alleged deficient performance, he would not have pleaded guilty. Coleman fails to plead facts that would demonstrate a reasonable probability that `but for counsel's unprofessional errors, the result of the proceeding would have been different.' Hyde [v. State], 950 So.2d [344,] 356 [(Ala.Crim.App.2006)]. Thus, Coleman has failed to meet his burden of pleading with respect to his ineffective assistance of counsel claim. Accordingly, the circuit court did not err in summarily dismissing Coleman's petition."
After the Court of Criminal Appeals overruled Coleman's application for rehearing, Coleman filed a petition for the writ of certiorari in this Court. In the certiorari petition, Coleman contended that the Court of Criminal Appeals' affirmance of the circuit court's summary dismissal of his Rule 32 petition conflicts with the following decisions: Elder v. State, 494 So.2d 922 (Ala.Crim.App.1986), overruled on other grounds, Ex parte Booker, 992 So.2d 686 (Ala.2008); Brown v. State, 727 So.2d 885 (Ala.Crim.App.1998); Ex parte Blackmon, 734 So.2d 995 (Ala.1999); and Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). We granted Coleman's petition for certiorari review.

Discussion
Coleman argues that the Court of Criminal Appeals erred in affirming the circuit court's summary dismissal of his Rule 32 petition. Specifically, Coleman argues that he met his burden of pleading in his Rule 32 petition so as to avoid the summary disposition of his petition; thus, Coleman says, he was entitled to an opportunity to present evidence in order to satisfy his burden of proof. We agree.
"Rule 32.3, Ala. R.Crim. P., states that `[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.' Rule 32.6(b), Ala. R.Crim. P., states that `[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.'
"`An evidentiary hearing on a [Rule 32] petition is required only if the petition is "meritorious on its face." Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is "meritorious on its face" only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986).'
"Moore v. State, 502 So.2d 819, 820 (Ala. 1986). A petitioner bears no burden of `proving' his claims at the pleading stage. See Ford v. State, 831 So.2d 641 (Ala.Crim.App.2001). As this Court noted *632 in Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003):
"`"Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief." Boyd v. State, 746 So.2d 364, 406 (Ala.Crim. App.1999). In other words, it is not the pleading of a conclusion "which, if true, entitle[s] the petitioner to relief." Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitle[s] a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts.'
"913 So.2d at 1125. Further,
"`The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003).'
"Hyde v. State, 950 So.2d 344, 356 (Ala. Crim.App.2006)."
Scott v. State, ___ So.3d ___, ___ (Ala. Crim.App.2010).
Also,
"[t]o prevail on a claim of ineffective assistance of counsel, a [Rule 32] petitioner must show (1) that his counsel's performance was deficient, and (2) that he was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987). In the context of a guilty-plea proceeding, a petitioner must show that, but for counsel's errors, the petitioner would not have pleaded guilty but would have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)."
Winbush v. State, 18 So.3d 423, 423 (Ala. Crim.App.2009).
Coleman contends that his decision to plead guilty to the four offenses "was based solely upon counsel's representations of parole and work-release eligibility" and that, had he known that he was actually ineligible for parole and work release because of the nature of the offenses,[6] he would not have pleaded guilty but, instead, "would have insisted on proceeding to trial." Coleman's brief, p. 10. Coleman further contends that his Rule 32 petition "presented sufficiently pleaded facts relied upon in seeking relief," id., and, thus, he says, "relief should have been granted or, a hearing set to allow Coleman to present proof of his claims." Id. at 11.
In his Rule 32 petition, Coleman stated, in pertinent part:
"It is Coleman's contention that had he known that he would not been [sic] eligible for work-release [and parole],. . . he would not have pleaded guilty, but would have insisted on proceeding to trial. Thus, Coleman avers his plea of guilty was involuntary [sic] given upon misrepresentations of Counsel."
Coleman has alleged facts that, if true, would entitle him to relief. As noted, Coleman alleged in the Rule 32 petition that, but for his attorney's misrepresentations concerning Coleman's eligibility for *633 parole and work release, he would not have pleaded guilty but, instead, would have insisted on going to trial. See Winbush, supra (citing Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Furthermore, in his affidavit, Coleman alleged "special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty." See Hill, 474 U.S. at 60, 106 S.Ct. 366. Specifically, Coleman alleged that he had no reason to plead guilty to a 20-year sentence without the possibility of parole or work release because, Coleman said, "at my age of 63, a 20 year sentence is a life sentence." Therefore, if the allegations of Coleman's petition are taken as true, Coleman placed "particular emphasis" on his attorney's statements regarding his eligibility for parole and work release in deciding to accept the plea agreement.
Based on the foregoing, we conclude that Coleman's Rule 32 petition was "meritorious on its face" and, thus, that the circuit court erred in summarily denying Coleman's Rule 32 petition.[7]See Scott, supra; see also Johnson v. State, 835 So.2d 1077, 1080 (Ala.Crim.App.2001) ("[W]hen a petition contains matters which, if true, would entitle the petitioner to relief, an evidentiary hearing must be held." (citing Ex parte Boatwright, 471 So.2d 1257, 1258 (Ala.1985)) (emphasis added)); Rash v. State, 968 So.2d 552, 554 (Ala.Crim.App.2006) ("Rule 32, Ala. R.Crim. P., requires the circuit court judge to conduct an evidentiary hearing on a Rule 32 petition that appears meritorious on its face." (emphasis added)).

Conclusion
Accordingly, we reverse the judgment of the Court of Criminal Appeals and remand this case for that court to remand it to the circuit court for an evidentiary hearing on Coleman's allegation that he was denied effective assistance of counsel. In lieu of an evidentiary hearing, the circuit court may take evidence by affidavits, written interrogatories, or depositions, as provided in Rule 32.9, Ala. R.Crim. P. In either event, the circuit court shall make specific findings of fact as required by Rule 32.9(d), Ala. R.Crim. P.[8]
REVERSED AND REMANDED WITH DIRECTIONS.
COBB, C.J., and LYONS, WOODALL, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
STUART, J., concurs in the rationale in part and concurs in the result.
STUART, Justice (concurring in the rationale in part and concurring in the result).
The decision in this case rests on whether William C. Coleman pleaded a claim of ineffective assistance of counsel in his Rule 32, Ala. R.Crim. P., petition that is "meritorious on its face." If he did, then the circuit court was required to conduct an evidentiary hearing. See Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). I write *634 to emphasize the reasons I conclude that Coleman's ineffective-assistance-of-counsel claim is "meritorious on its face" and that an evidentiary hearing is required.
In his Rule 32 petition, Coleman alleged that his guilty plea was involuntary by reason of ineffective assistance of counsel because his attorney had misinformed him as to his eligibility for work release and parole. According to Coleman, his attorney advised him that he was eligible for work release and parole when in light of the offenses he had committed he was ineligible for either. In pleading his ineffective-assistance-of-counsel claim, Coleman alleged that he pleaded guilty and did not proceed to trial because of his belief that he was eligible for work release and parole. In essence, Coleman maintained that his plea was "involuntary" because his attorney supplied him with information about parole and work-release eligibility that was erroneous and that, in so doing, his attorney had rendered ineffective assistance.
In Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the United States Supreme Court held that the two-part test provided in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applied to a challenge to a guilty plea based on ineffective assistance of counsel. The United States Supreme Court stated:
"In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence. . . . The second, or `prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the `prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."
474 U.S. at 58-59, 106 S.Ct. 366.
In Hill, the petitioner claimed in his petition for federal habeas corpus relief that his plea was "involuntary" as a result of ineffective assistance of counsel because his court-appointed attorney had provided him with erroneous information about his parole eligibility. The United States Supreme Court refused to address the substantive issue because the petitioner had failed to properly plead his claim. The Court stated:
"In the present case the claimed error of counsel is erroneous advice as to eligibility for parole under the sentence agreed to in the plea bargain. App. 31. We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the Strickland v. Washington requirement of `prejudice.' Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial. He alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Indeed, petitioner's mistaken belief that he would become eligible for parole after serving one-third of his sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely *635 would serve if he went to trial and were convicted."
474 U.S. at 60, 106 S.Ct. 366.
In pleading his claim of ineffective assistance of counsel, Coleman satisfied the first prong of Strickland by alleging that his attorney's performance was deficient in providing him with erroneous information about his parole and work-release eligibility. Unlike the petitioner in Hill, Coleman satisfied the second prong of Strickland by alleging that "but for" the attorney's misrepresentation he would not have pleaded guilty and would have proceeded to trial. Coleman also pleaded special circumstances, i.e., his age and life expectancy, to support the conclusion that he placed particular emphasis on his parole and work-release eligibility in deciding whether to plead guilty. Therefore, as the majority concluded, Coleman properly pleaded his claim of ineffective assistance of counsel.
I also agree with the majority's conclusion that if the allegations, as pleaded by Coleman, are taken as true, Coleman is entitled to an evidentiary hearing. Generally, misinformation from counsel about speculative, collateral consequences of a guilty plea does not establish that a defendant entered an involuntary plea, even if the defendant relied upon the misinformation in pleading guilty. As the Court of Criminal Appeals of Texas stated in Ex parte Evans, 690 S.W.2d 274, 278-79 (Tex. Crim.App.1985):
"The question for resolution, therefore, is: Is applicant's plea of guilty involuntary simply because his attorney relayed erroneous parole eligibility advice upon which applicant relied, at least in part, in pleading guilty?
". . . [W]e examine the importance that we wish to attach to parole eligibility vis-a-vis voluntariness of a guilty plea. We do so from the premise that some expectations of a defendant about the circumstances or consequences of his plea, though perhaps important to him, are just too speculative to warrant being given effect upon his guilty plea. It would be unimaginable to label a guilty plea [involuntary] because the defendant was misinformed about the quality of rehabilitation services or living conditions or working conditions or social conditions, etc., in prison. This is so, in large part, because these things, though important, commonly are subject to (and in fact often do) change. They are, at best, speculative both in general and as to a particular individual.
"Likewise, parole becomes an important factor in the future of every actual and potential prison inmate. It is likely to be considered by most defendants as a factor that influences their decision to accept a particular offer of years from the State in exchange for a guilty plea. The criminal justice system accepts this, for the well known objectives of parole are laudatory. But eligibility for parole is a fluctual societal decision; highly subject to change. As stated in Hill v. Lockhart, 731 F.2d 568 (8th Cir.1984), cert. granted, 470 U.S. 1049, 105 S.Ct. 1745, 84 L.Ed.2d 811 (1985):
"`Further reasons . . . make it undesirable that claimed misadvice on parole eligibility render the plea involuntary. The petitioner's behavior and legislative and administrative changes in parole eligibility rules may effect this date. Every plea bargaining arrangement thus would be subject to reopening any time a defendant did not become eligible for parole at the time estimated.'
"Further, and more to the point, the actual obtaining of parole is even more elusive.
"`Parole is very much a speculative proposition. Its happening is contingent on many factors unknown and *636 nonexistent at the time of a guilty plea. Factors such as the conduct of appellant in prison, the composition and attitude of the parole board, the population of the prison system, the identity and attitude of the governor, the regulations governing `good time,' etc., all are yet to be when the defendant decides to plead guilty. The erroneous advice from counsel about the time frame of parole eligibility is then about an event, parole whose time of occurrence, if any, cannot even be accurately guessed at.' Ex parte Carillo, 687 S.W.2d 320 (Tex.Cr.App.1985) (Concurring opinion).
"We think, then, that the speculative nature of parole attainment is such as to discount its legal importance on the subject of voluntariness of a guilty plea. This legal importance is discounted to the extent that erroneous advice of counsel on the subject of parole eligibility will not render the plea involuntary."
In this case, however, the misrepresentation by Coleman's counsel was more than speculation. If counsel had merely represented that Coleman would be eligible for work release or parole within a certain period and counsel grossly misinformed Coleman of the period, then the misrepresentation involved mere speculation, and I could not conclude that the facts, if true, warranted an evidentiary hearing. A misrepresentation regarding work-release or parole attainment, which is so speculative in nature, cannot render a plea involuntary; however, an affirmative misrepresentation regarding a defendant's eligibility for work release or parole can. Cf. O'Tuel v. Osborne, 706 F.2d 498 (4th Cir. 1983) (holding that the defendant's plea was involuntary because the defendant was "grossly misinformed" that if he would plead guilty in exchange for a recommendation of a life sentence, he would be eligible for parole in 10 years, when he would actually be eligible after 20 years, and he relied on that information). Here, Coleman pleaded that his counsel affirmatively represented to him that he would be eligible for work release and parole, when by law Coleman cannot qualify for either; such a misrepresentation is concrete, specific, and gross. Because Coleman alleged in his pleading facts that, if proven to be true, establish that he was grossly misinformed, that it was reasonable for him to rely upon the misrepresentation, and that a manifest injustice would result if relief is not granted,[9] an evidentiary hearing is warranted.
NOTES
[1] Alabama Code 1975, § 13A-6-61(a)(3), provides that "[a] person commits the crime of rape in the first degree if . . . [h]e or she, being 16 years or older, engages in sexual intercourse with a member of the opposite sex who is less than 12 years old."
[2] Alabama Code 1975, § 13A-6-63(a)(3), provides that "[a] person commits the crime of sodomy in the first degree if . . . [h]e, being 16 years old or older, engages in deviate sexual intercourse with a person who is less than 12 years old."
[3] Alabama Code 1975, § 13A-6-66(a)(1), provides that "[a] person commits the crime of sexual abuse in the first degree if . . . [h]e subjects another person to sexual contact by forcible compulsion."
[4] When he filed the Rule 32 petition, Coleman did not pay the filing fee; instead, he filed a request to proceed in forma pauperis. On April 1, 2009, the circuit court denied Coleman's request to proceed in forma pauperis. Coleman then filed a petition for a writ of mandamus with the Court of Criminal Appeals, seeking an order requiring the circuit court to grant his request to proceed in forma pauperis; the Court of Criminal Appeals denied the mandamus petition on July 2, 2009. On July 21, 2009, Coleman paid the requisite filing fee for his Rule 32 petition.
[5] Coleman alleges that, "[a]fter processing into the [Alabama Department of Corrections,]" he "was informed by classification specialist that . . . [he] is barred from parole consideration due to alleged victim being under the age of twelve." See Coleman's brief, p. 3; see also Ala.Code 1975, § 15-22-27.3 (providing that "[a]ny person convicted of a criminal sex offense involving a child . . . which constitutes a Class A or B felony shall not be eligible for parole"). Coleman also alleges that the "classification specialist informed Coleman he would not be considered nor is eligible for work-release or any lesser restrictive custody due to his convictions for sexual offenses." See Coleman's brief, p. 12.
[6] See supra note 5.
[7] The State contends that the Court of Criminal Appeals correctly affirmed the circuit court's summary dismissal of Coleman's Rule 32 petition, arguing, among other things, that "Coleman's ineligibility for work release and parole is a collateral [rather than a direct] consequence of his guilty plea and does not support the prejudice prong [of the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984)]." The State's brief, p. 11. However, the State did not raise this issue in its motion to dismiss; thus, Coleman had no opportunity to address this issue before the circuit court. Nonetheless, the object of Coleman's petition is not per se his ineligibility for work release and parole; rather, it is the involuntariness of his guilty plea itself.
[8] We express no opinion on the merits of Coleman's ineffective-assistance-of-counsel claim.
[9] See Rule 14.4(e), Ala. R.Crim. P.